IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARWIN WALTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-763-DWD |
| | ) |
| OFFICER BRIAN SABO, | ) |
| OFFICER JERRY HIGHT, | ) |
| OFFICER CHARLES GERMAINE, | ) |
| DR. DENNIS LARSON, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In this matter, Plaintiff Darwin Walters, an inmate of the Illinois Department of Corrections and currently housed at Shawnee Correctional Center, brings this civil rights action against Defendants Brian Sabo, Jerry Hight, Charles Germaine, and Dennis Larson for alleged civil rights violations which occurred while he was a detainee of St. Clair County Jail. Following a threshold review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff proceeds on the following counts:

> **Count 1**: Fourteenth and/or Eighth Amendment claim against Brian Sabo[1] for subjecting Plaintiff to unsafe conditions that caused him to fall and fracture his finger in the Pod AA showers on or about December 17, 2018; and
>
> **Count 2**: Fourteenth and/or Eighth Amendment claim against Charles Germaine, Jerry Hight, and Dennis Larson[2] for denying

---

[1] On February 22, 2021, Defendant Brian Sabo was substitute for John Doe 1 (Doc. 32).
[2] On February 22, 2021, Defendant Charles Germaine was substituted as John Doe 2 (Doc. 32). On March 2, 2021, Defendant Dennis Larson was substituted as John Doe 3 (Doc. 35)

1

> adequate and timely medical care for Plaintiff's fractured finger and causing him to suffer prolonged and unnecessary pain.

(*See* Doc. 16; Doc. 17). Now before the Court are two motions for summary judgment (Docs. 65, 70) filed by the Defendants on the issue of Plaintiff's exhaustion of administrative remedies. Plaintiff filed responses to the motions (Docs. 72, 73), and Defendant Lawson filed a reply (Doc. 75).

## Background

When detained at the St. Clair County Jail in 2018-2019, Plaintiff alleges he was exposed to unsafe conditions in the Pod AA showers (Doc. 16, Doc. 17). Plaintiff contends that leaky pipes caused water to pool on the floors and mold to grow in the shower stalls, causing slippery conditions (*Id*). Plaintiff made verbal and written complaints to staff, including on November 2, 2018, when he asked Officer Brian Sabo for cleaning supplies and floor mats (*Id.*).

On December 17, 2018, Officer Jerry Hight passed out cleaning supplies for the showers, and Plaintiff informed him about the dangerous shower conditions (*Id.*). Officer Hight said there was nothing he could do (*Id.*). Plaintiff and other detainees used the cleaning supplies to mop up water and clean the area, but Officer Hight collected the supplies before they finished cleaning (*Id.*). Soon thereafter, Plaintiff fell on the wet, moldy shower floor and seriously injured his finger (*Id.*). When Plaintiff reported the injury to Officer Charles Germaine, Germaine asked "what do you want me to do about it?" (*Id.*). Germaine then ignored Plaintiff's request for medical care (*Id.*). When a nurse made rounds later that day, Plaintiff was sent to the infirmary where he was given a splint

2

and aspirin and placed on the doctor's call list (*Id.*).  Plaintiff alleges that he suffered significant pain while waiting for an appointment with the doctor (*Id.*).

On December 20, 2018, Dr. Dennis Lawson ordered x-rays of Plaintiff's hand (*Id.*). On December 22, 2018, Dr. Lawson informed Plaintiff that the x-rays revealed a serious fracture requiring treatment with a specialist (*Id.*).  Plaintiff was sent to a specialist on December 28, 2018, at which time the specialist placed a cast on his finger and indicated that it would remain in place for five or six weeks (*Id.*).  Four weeks later, the specialist determined that the fracture was not healing correctly, and on March 7, 2019, Plaintiff had surgery to place a pin in his finger (*Id.*).  Following surgery, Plaintiff alleges that follow-up care was recommended, but he never received any.  Further, Dr. Lawson failed to place Plaintiff on a medical hold, and Plaintiff was transferred into the custody of the Illinois Department of Corrections (*Id.*).

Relevant to the pending motions, Plaintiff submitted three Captain's Complaints/Requests while he was at the St. Clair County Jail (Doc. 70-2, ¶ 30).  These complaints are dated December 18, 2018, December 25, 2018, and December 26, 2018 (Doc. 70-3; Doc. 66-4).  Only the December 18th and December 25th complaints are relevant to this matter.[3]  The parties do not dispute that these two complaints were submitted and reviewed (*See* Doc. 72, p.7-8, 18-19).  The parties also do not dispute that Plaintiff did not submit any grievance forms while at the Jail (*See* Doc. 73, p. 6, ¶ 14) (Plaintiff does not

---

[3] Plaintiff's December 26, 2018 request form concerned a phone number restriction and is not related to any of Plaintiff's allegations in his complaint (Doc. 66-4).

3

dispute Defendants' factual allegation that he did not submit any grievance forms; he only submitted Captain's Complaints).

In his December 18th Captain's Complaint, Plaintiff complains that he slipped and broke his finger while in the shower due to water leaking (Doc. 66-4, p. 1; Doc. 72, p. 18). Plaintiff stated that "Officer Jerry was pushing for the cleaning supplies" (*Id.*). Plaintiff also "buzzed the officer for the nurse which never came until they were going to pass out meds." (*Id.*). Plaintiff requested that the shower floor be fixed (*Id.*). On December 18, 2018, the supervisor responded to this complaint, indicating that Plaintiff had been escorted to medical and treated by Nurse Murry on December 18, 2018 (*Id.*).

In his December 25th Captain's Complaint, Plaintiff asked for a grievance form as a follow up to his December 18th Captain's Complaint (Doc. 66-4, p. 2; Doc. 72, p. 19). The complaint was forwarded to Captain Stockett the same day (Doc. 72, p. 19). On December 28, 2018, the supervisor responded, indicating that Sgt. Bujnak had spoken with Plaintiff about his complaints (*Id.*). Sgt. Bujnak further reported that medical had been notified of Plaintiff's December 18th Captain's Complaint, but that maintenance had not been notified (*Id.*). Accordingly, Sgt. Bujnak left a voicemail for maintenance concerning the leaky shower and Plaintiff's fall (*Id.*). Sgt. Bujnak stated that he told Plaintiff about the voicemail he left maintenance (*Id.*).

## Legal Standard

Defendants seek summary judgment pursuant to Fed. R. Civ. P. 56, arguing that Plaintiff failed to exhaust his administrative remedies before filing this action. Summary judgment is "proper only if the pleadings, discovery materials, disclosures, and affidavits

4

demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants bear the initial burden of demonstrating a lack of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Court considers the facts in a light most favorable to Plaintiff, the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).* However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 588-90 (7th Cir. 2015); *see Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). A hearing is not necessary, however, when exhaustion, or the lack of exhaustion, is apparent. *Wagoner*, 778 F.3d at 588; *see also Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009) (No *Pavey* hearing is required when purely legal issues and undisputed facts control the administrative remedies issue). No contested issues of fact regarding exhaustion are apparent here, and a hearing is not required.

Lawsuits filed by inmates are governed by the Prison Litigation Reform Act ("PLRA"). The PLRA provides, in relevant part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by

5

a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). However, an inmate is only required to exhaust those administrative remedies that are available to him. 42 U.S.C. § 1997e(a); *Reid*, 962 F.3d at 329. Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance. *See e.g. Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Nor is an inmate required to further appeal a grievance once it is determined that he has received all requested relief and no further remedies are available. *Thornton v. Snyder*, 428 F.3d 690, 694-97 (7th Cir. 2005).

Pre-trial detainees at the St. Clair County Jail must follow the grievance process outlined in the Detainee Rules and Regulations Handbook (Doc. 70-4, pp. 13-14)[4]. This

---

[4] Plaintiff was detained at the St. Clair County Jail from October 30, 2018 to March 14, 2019 (Doc. 70-1). At the time of his booking, the October 2017 Detainee Rules and Regulations Handbook was in effect. However, in January 2019, revisions were made to the Handbook. The October 2017 Handbook is attached as Doc. 70-4 and the January 2019 Handbook is attached as Doc. 70-5. There are no differences between the two handbook provisions concerning the Jail's Grievance Procedure (*Compare,* Doc. 70-4, pp. 13-14 to Doc. 70-5, p. 11).

6

grievance procedure is best understood as a 3-step process. Before initiating the formal grievance process, the detainee must provide the captain with a "Captain's Request." (Doc. 70-4, pp. 13-14). This is done using a form entitled "St. Clair County Sheriff's Department Request – Complaint Form" or "St. Clair County Sheriff's Department – Request Form" (*See* Doc. 70-6). These forms have four sections for the detainee to describe his request and for the officer, supervisor, and administrator to describe their actions in response (*Id.*). If the request or complaint is not resolved via a Captain's Complaint/Request, the detainee has the option to submit a formal grievance to the on-duty shift supervisor (Doc. 70-4, pp. 13-14). This is done using a form entitled "St. Clair County Jail – Detainee Grievance Form" (*See* Doc. 70-7). On the bottom of the Grievance Form, the following note appears in bold font: "***NOTE: St. Clair County Sheriff's Department Request Complaint Form must be submitted prior to filing a Detainee Grievance Form.***" (Doc. 70-7) (emphasis in original). The formal grievance is processed through 2 stages, finally resolved by the jail superintendent (Doc. 70-4, pp. 13-14).

## Discussion

Defendants argue that Plaintiff did not fully exhaust any of his claims in this matter because he did not submit any timely grievances related to his claims (Docs. 66, 70). Defendants also submit that the December 18th and December 25th Captain's Complaints did not properly exhaust Plaintiff's claims. Plaintiff concedes that he did not file a grievance form while at the St. Clair County Jail (Doc. 73, p. 6, ¶ 14) (Plaintiff does not dispute Defendants' factual allegation that he did not submit any grievance forms, but only submitted Captain's Complaints). However, Plaintiff argues that he did

7

properly exhaust his claims or was otherwise prevented from filing a grievance form by Defendants.

Both the December 18th and December 25th Captain's Complaints raise issues related to Plaintiff's remaining claims in this matter. Count 1 presents a claim for unsafe shower conditions which caused Plaintiff to fall and fracture his finger. The December 18th Complaint raises issues related to this claim because it states that Plaintiff broke his finger due to the leaking shower, and Plaintiff requested that the shower be fixed (Doc. 72, p. 18). The December 25th Complaint also concerns Count 1, as Plaintiff requested a follow-up on his request to have the shower floors fixed (Doc. 72, p. 19). These allegations are sufficient to alert the Jail to Plaintiff's claims in Count 1. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (Generally, administrative complaints are sufficient if the complaint "alerts the prison to the nature of the wrong for which regress is sought."). Count 2 presents a claim for inadequate and untimely medical care. The December 18th Complaint raises issues related to this claim because it provides that Plaintiff "buzzed the officer for the nurse which never came until they were going to pass out meds." (Doc. 72, p. 18). This too is sufficient to alert the Jail to Plaintiff's claims in Count 2.

While the December 18th and December 25th Captain's Complaints reference the general nature of Plaintiff's claims in Counts 1 and 2 of his complaint, they do not necessarily provide enough specificity to directly identify each Defendant so to survive summary judgment here. While a grievant is not required to know the name of the prison employee whom he's complaining about (and often will not know the employee's name) before filing a grievance, *see Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014), they must

still identify a sufficient description of the alleged wrongdoer personally involved in the incidents.  *See Fencel v. Cross*, 857 Fed.Appx. 869, 871 (citing *Roberts*, 745 F.3d at 235-36) (finding that failing to identify the target of a grievance is fatal under Illinois law); *see also Ambrose v. Godinez*, 510 Fed.Appx. 470, 472 (7th Cir. 2013) (a grievance should implicate subjects by name or inference).  Here, the complaints only refer to Defendant Hight and Defendant Germaine (referred to in the December 18th Complaint as an unnamed officer).  However, neither complaint refers to Defendant Sabo or Defendant Larson.  As such, the Court will address the sufficiency of the Captain's Complaints related to each individual Defendant in turn.

### *A.     Defendant Hight*

The December 18th Captain's Complaint specifically identifies Defendant Hight.  It states that Defendant Hight "was pushing for the cleaning supplies so the floor was left wet coming out of my cell" leading to Plaintiff's fall (Doc. 72, p. 18).  These allegations relate to Count 1 of Plaintiff's complaint for unsafe shower conditions.  However, Count 1 is <u>*not*</u> directed against Defendant Hight; it is only directed at Defendant Sabo. Indeed, the Court previously dismissed Defendant Hight from Count 1 in its screening order (*See* Doc. 17).

Apart from the allegations concerning unsafe shower conditions, the December 18th Complaint does not allege that Defendant Hight refused or delayed Plaintiff's medical treatment following his fall.  In his brief, Plaintiff confirmed that he did not exhaust a claim related to a Defendant Hight's delay in rendering medical treatment

9

because he is not asserting such a claim against Defendant Hight (Doc. 73, pp. 3-4). Specifically, in paragraph 9 of his response, Plaintiff provides:

> The plaintiff makes no claim of denial of medical treatment against Officer Jerry Hight. The only claim that the plaintiff raises against defendant Hight is for his deliberate indifference to the complaint of unsafe conditions, and refusal to provide adequate time for use of cleaning supplies to correct the unsafe condition that caused Plaintiff's injury.

(Doc. 73, p. 4, at ¶ 9). Plaintiff repeats this statement later in his brief, again confirming that his "claim against Officer Hight is based on his deliberate indifference to the unsafe and hazardous conditions within pod AA." (Doc. 73, p. 11; *see also* Doc. 73, p. 13). Accordingly, the undisputed evidence in this matter shows that Plaintiff did not pursue any efforts to exhaust a claim for untimely medical care against Defendant Hight. As such, the claims against Defendant Hight in Count 2 of Plaintiff's complaint will be dismissed, without prejudice, for a failure to exhaust administrative remedies.

### B.     *Defendant Germaine*

The December 18th Captain's Complaint specifically identifies Defendant Germaine. After his fall, Plaintiff stated that he buzzed Defendant Germaine for the nurse, but that the nurse did not come until they were going to pass out meds. (Doc. 72, p. 18). These allegations relate to Plaintiff's Count 2 for deliberate indifference and delay of medical treatment by Defendant Germaine based on his refusal to contact a nurse for Plaintiff after Plaintiff requested to be seen. Because the remaining allegations in Count 2 (*i.e.*, those related to Plaintiff's medical treatment by Defendant Larson) do not implicate Defendant Germaine, the period of alleged indifference asserted against Defendant Germain is limited to the hours following Plaintiff's request to be seen by a nurse on

December 18, 2018, and the time it took for the nurse to arrive and treat Plaintiff on December 18, 2018.[5]

In reviewing this limited period of time, the Court is cognizant that inmates are not required to appeal grievances or continue with the exhaustion process once their complaints are resolved as requested. *See Thornton v. Snyder*, 428 F.3d 690, 694-95 (7th Cir. 2005). Here, by the time Plaintiff's December 18th Captain's Complaint was reviewed (also on December 18th) Plaintiff had already been escorted to medical and treated by Nurse Murry (Doc. 72, p. 18). As such, by the time Plaintiff's Complaint was reviewed he had already received all of the requested administrative relief related to Defendant Germaine's actions, namely, to have a nurse called. Accordingly, the administrative process afforded Plaintiff no further remedies related to Defendant Germaine's actions, and he was not required to continue with the grievance process related to this relief after he was treated on December 18th. Accordingly, Defendant Germaine has not met his burden to show that Plaintiff failed to exhaust his administrative remedies as to Count 2 of Plaintiff's Complaint, and Defendant's Motion as it relates to the claim against Defendant Germaine will be denied.

### C. *Defendant Sago*

Plaintiff did not identify Defendant Sago in either of his Captain's Complaints. Instead, Plaintiff relies on his general reference to the shower floors in his December 18th Captain's Complaint to show that his claim against Defendant Sago was exhausted.

---

[5]Plaintiff represents that this period of time was more than 2 hours (Doc. 73, p. 17, ¶¶ 20-21). At the exhaustion stage, the Court takes no position on whether this length of time is sufficient to establish a violation under the Eighth or Fourteenth Amendments.

11

However, this complaint only references two individuals, Defendants Hight and Germaine, and does not otherwise suggest that another individual, let alone Defendant Sago, was involved in subjecting Plaintiff to the unsafe shower conditions. While grievances are generally sufficient to state a claim for exhaustion purposes if they alert the prison "to the nature of the wrong for which regress is sought", *see Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), a grievant must still provide enough description to implicate specific individuals or subjects by a name or inference in their complaint. *See Roberts*, 745 F.3d at 235-36; *Ambrose*, 510 Fed.Appx. at 472.

Here, neither Captain's Complaint implicates Defendant Sago by name or inference. Instead, the complaints only identify two defendants, without any other indication that a third individual or unidentified John Doe defendant was also responsible for Plaintiff's injuries or the shower conditions. Accordingly, nothing in his Captain's Complaints served to identify Defendant Sago's involvement in creating or subjecting Plaintiff to unsafe shower conditions so to exhaust his claims in Count 1. Plaintiff does not argue that he otherwise attempted to file a Captain's Complaint or grievance form against Defendant Sago specifically. Indeed, Plaintiff fails to mention Defendant Sago in any substantive way in his briefing, and instead only argues that Count 1 was exhausted as to Defendant Hight, who was already dismissed from Count 1 by the Court's prior screening order (Doc. 72, Doc. 73). Accordingly, the undisputed material facts show that Plaintiff did not take or purse any efforts to exhaust his claims against Defendant Sago in Count 1 of his complaint, and this count will be dismissed, without prejudice for a failure to exhaust administrative remedies.

### D. Defendant Larson

Plaintiff also did not identify Defendant Larson in either of his Captain's Complaints. Plaintiff concedes that he failed to file Captain's Complaint against Dr. Larson in Count 2 of his Complaint (Doc. 72, ¶ 10). However, Plaintiff argues that this failure should be excused for at least three reasons. *First*, Plaintiff argues that he was denied access to a grievance form by the Jail staff (Doc. 72, at ¶ 11). *Second*, Plaintiff argues that he filed a grievance concerning his inadequate medical treatment and follow-up care in September 2019, after he transferred to Shawnee Correctional Center (Doc. 72, at p. 4). *Third*, Plaintiff argues that the captains' complaint process is not an official step in the grievance process.

The Court will address this final argument first as it easily rejected. Apart from blanket statements that the filing a Captain's Complaint is not a required step in the grievance process, Plaintiff offers no evidence in support of this contention so to create a genuine issue of material fact here. The plain language in the Detainee Rules & Regulations Handbook and the note on the bottom of the St. Clair County Jail's Grievance Form both clearly state that a captain's complaint/request must be submitted prior to the grievance procedure. *See* Doc. 70-4, p. 14 ("A Captains request must be submitted prior to the grievance procedure."); Doc. 70-5, p. 11 ("A Captains request must be submitted prior to the grievance procedure."); (Doc. 70-7) ("***NOTE: St. Clair County Sheriff's Department Request Complaint Form must be submitted prior to filing a Detainee Grievance Form.***" (Doc. 70-7) (emphasis in original). In addition to the plain language on the grievance procedure documents and forms, the uncontested evidence demonstrates

13

that Plaintiff successfully initiated the Captain's Complaint process on at least three occasions. As such, there is no material dispute that the Captain's Complaint process was a required step of the grievance process.

Plaintiff also argues that he was exempt from filing a Captain's Complaint concerning Dr. Larson's actions because he planned to write these complaints on a grievance form that his pod officers did not provide. In sum, Plaintiff admits that he did not file a Captain's Complaint against Dr. Larson (which is the necessary first step in the grievance process), but instead tried to skip this initial step and proceed directly to the second step in the grievance process by filing a grievance form. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Plaintiff is not excused from filing a Captain's Complaint simply because he sought to file a grievance form *before or instead of* submitting a Captain's Complaint.

Furthermore, Plaintiff does not argue that he was denied access to filing a Captain's Complaint against Dr. Larson. Indeed, Plaintiff acknowledges, and the undisputed evidence shows, that he did successfully file Captain's Complaints during the relevant time period at issue in this matter. (*See* Doc. 70-3; Doc. 66-4). Plaintiff even confirms that he filed his December 25th Captain's Complaint because he had not yet received a grievance form from his Pod officers (Doc. 72, ¶¶ 10-13). Accordingly, the

14

undisputed evidence confirms that Plaintiff was not prohibited from filing a Captain's Complaint against Dr. Larson so to initiate the grievance process again him, but that Plaintiff chose to bypass this initial step and proceed directly to requesting a grievance form. Because Plaintiff failed to take all of the necessary steps required by the Jail's grievance system, he did not exhaust his claims against Dr. Larson while at St. Clair County Jail.

Nevertheless, Plaintiff also argues that his claims against Dr. Larson were successfully exhausted because he filed a grievance on September 2, 2019, while he was at Shawnee Correctional Center (Doc. 72, p. 4). However, this grievance only concerned Plaintiff's allegations of inadequate medical treatment and follow-up care, which are not at subject in this matter. Those related claims were raised in Count 3 of Plaintiff's Second Amended Complaint and dismissed for a failure to state a claim in the Court's October 23, 2020 screening order (Doc. 17). Because Plaintiff's claims in this matter are limited to his allegations of prolonged and unnecessary suffering related to a denial of timely medical care (Doc. 17) and not to his inadequate treatment and follow-up care, the September 2, 2019 grievance did not exhaust Plaintiff's claims. Accordingly, Plaintiff did not properly exhaust his claims against Dr. Larson in Count 2 of the complaint. Those claims will therefore be dismissed, without prejudice, for a failure to exhaust administrative remedies.

## Conclusion

For the above stated reasons, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Larson (Doc. 65) is **GRANTED**.

15

The claims against Dr. Larson in Count 2 of Plaintiff's Second Amended Complaint are **DISMISSED, without prejudice**, for a failure to exhaust administrative remedies.

The Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Charles Germaine, Jerry Hight, Brian Sabo (Doc. 70) is **GRANTED, in part, and DENIED, in part**. The claims against Defendant Sabo in Count 1 and Defendant Hight in Count 2 of Plaintiff's Second Amended Complaint are **DISMISSED, without prejudice**, for a failure to exhaust administrative remedies. The claim against Defendant Germaine in Count 2 remains.

The stay on merits-based discovery (*see* Doc. 62) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**SO ORDERED.**

Dated: February 25, 2022

_____
DAVID W. DUGAN
United States District Judge