IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARWIN WALTERS,                           )
                                          )
            Plaintiff,                    )
                                          )
vs.                                       )          Case No. 19-cv-763-DWD
                                          )
OFFICER CHARLES GERMAINE,                 )
                                          )
            Defendant.                    )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court is Defendant Charles Germaine's Motion for Summary Judgment (Doc. 82). Plaintiff filed a timely response (Doc. 84), to which Defendant replied (Doc. 85). For the reasons detailed below, the Motion will be granted.

## Background

In this matter, Plaintiff Darwin Walters, an inmate of the Illinois Department of Corrections and currently housed at Shawnee Correctional Center, brings this civil rights action for alleged civil rights violations which occurred while he was a detainee of St. Clair County Jail. Following a threshold review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A (Doc. 16; Doc. 17), and the Court's Order resolving two motions for summary judgment on the issue of Plaintiff's exhaustion of administrative remedies (Doc. 76), only one count remains:

**Count 2**:      Fourteenth Amendment claim against Charles Germaine for denying adequate and timely medical care for Plaintiff's fractured finger and causing him to suffer prolonged and unnecessary pain.

1

The following facts taken from the record are undisputed except where otherwise noted.  In December 2018, Plaintiff was detained at the St. Clair County Jail, and housed in the AA Block (Docs. 82-1; 82-2).  Sometime during the evening of December 17, 2018, Plaintiff slipped and fell on a wet spot near the showers, injuring his left hand (Doc. 82-1, p. 10).  According to Plaintiff, as he was falling, he brushed his hand against the wall and "it snapped" (Doc. 82-1, pp. 10, 16). Plaintiff felt shooting pain in his hand and then began walking around, yelling and cursing (Doc. 82-1, pp. 10, 16-17).  Plaintiff estimated that he walked around for no more than two minutes (Doc. 82-1, p. 16).  He then went and used a pod intercom system to communicate with the console officer on the other end (Doc. 82-1, pp. 17-21).  Defendant describes the pod intercom system as "a two-way communication system" that is not an emergency alarm system, and is generally used by inmates for "routine, mundane and everyday matters such as inquiries about when commissary is to be delivered." (Doc. 82-7).  Prior to this incident, Plaintiff never used the pod intercom system, and does not recall anyone else using it (Doc. 82-1, pp. 28-29).

Plaintiff testified that he told the console officer that he had slipped and fell (Doc. 82-1, pp. 20-22).  The officer responded, asking "[w]hat do you want me to do about it?" (Doc. 82-1, p. 22).  Plaintiff contends that he "requested to be seen by the nurse" and "was in severe pain and in need of medical attention."  (Doc. 82-1, p. 20).  However, Plaintiff did not say his hand was broken or give any further description of his injuries (Doc. 82-1, p. 21). The officer did not reply, and Plaintiff had no other interactions with him (Doc. 82-1, p. 22).  Plaintiff describes the end of their conversation as if the officer "hung up the phone on me." (*Id.*).

2

Defendant Germaine was the officer working the console during the evening shift of December 17, 2018, from 5:45 p.m. to 5:45 a.m. (Docs. 82-1, p. 22; 82-4; 82-6). Prior to this incident, Plaintiff had never interacted with Defendant (Doc. 82-1, p. 19). Plaintiff testified that he could not give a description of Defendant, and because the console is made of black glass, he could not see who was working the console that evening (*Id.*). Plaintiff also testified that he had no interactions with Defendant after December 17, 2018 (Docs. 82-1, p. 20; 82-8). Defendant maintains that he has no recollection of the events form that evening and does not recall Plaintiff communicating with him using the pod intercom system (Docs. 82-6; 82-7). Defendant further denies that Plaintiff ever contacted him to report an injury (*Id.*).

After using the pod intercom system, Plaintiff testified that he "[s]at around in pain, used the phone, and notified [his] family members that [he] was injured." (Doc. 82-1, p. 30). Records from the jail phone system indicate that Plaintiff called his girlfriend two or three times after his injury, starting around 7:00 p.m. (Doc. 82-9). Plaintiff testified that he called his girlfriend roughly 20-30 minutes after his injury (Doc. 82-1, p. 35). On the call, he discussed his injury, along with other matters (Doc. 82-1, pp. 35-36). However, Plaintiff did not communicate with anyone else at the Jail about his fall or injury until a nurse arrived on his block that evening to pass out medications (Doc. 82-1, pp. 37, 48).

The parties agree that the nurse Plaintiff interreacted with was Nurse Murray (Doc. 82-1, p. 32). When Nurse Murray arrived, Plaintiff testified that he approached her about falling and his injuries (Doc. 82-1, p. 45). Plaintiff asked Nurse Murray if she had received a call from the officers stating that he needed medical attention, to which she

3

responded "no." (Doc. 82-1, pp. 31-32).  Plaintiff then showed Nurse Murray his finger, and she stated that she needed to bring him out to treat him (Doc. 82-1, p. 32).  Plaintiff estimates that the time between when he used the pod intercom system and Nurse Murray's arrival was "roughly two hours" (Doc. 82-1, pp. 37, 47).  A sick call log from December 17, 2018, indicates that Plaintiff was seen around 9:15 p.m. (Doc. 82-10).

After Nurse Murray finished passing out medications, she had correctional officers escort Plaintiff to the infirmary for further treatment (Doc. 82-1, pp. 21, 46-47). Plaintiff testified that the medical staff "didn't do anything but give me some aspirin and put a wooden splint on it." (Doc. 82-1, p. 58).  However, Plaintiff also testified that he was given an ice pack, and an order was placed for him to be seen by a doctor and have an x-ray taken (Doc. 82-1, pp. 62-63).  Plaintiff's medical records are consistent with Plaintiff's testimony on the treatment he received on December 17, 2018 (Doc. 82-11). According to those records, Plaintiff was examined around 9:20 p.m. and the nurse reported that his finger was disfigured, swollen, and tender to touch (Doc. 82-11). Plaintiff was given a splint, Tylenol, and an ice pack, and orders were entered for Plaintiff to have an x-ray taken (Doc. 82-11).

On December 18, 2018, x-rays were taken of Plaintiff's left fingers (Docs. 82-1, p. 68; 82-12, p.2).  Plaintiff's radiology report indicated swelling in the third PIP joint, with a "subtle periosteal exaction along the head of the third proximal phalanx … with a subtle nondisplaced healing fracture" (Doc. 82-12, p. 2).  Plaintiff's pain continued over the next several days, resulting in him being moved to the infirmary to receive stronger, scheduled pain medication (Docs. 82-1, pp. 65-66; 82-2). He was then sent to a specialist on December

28, 2018 (Doc. 82-1, p. 64), where Plaintiff testified that he was diagnosed with an ongoing finger deformity (Doc. 82-1, p. 72).  Plaintiff testified that he had ligament surgery on March 5, 2019 (Doc. 82-1, p. 88).  He also testified that he continues to have pain in his hand and difficulty with his grip (Doc. 82-1, pp. 75-78).

## Legal Standard

Summary judgment is proper if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).  The court does not "judge the credibility of witnesses, evaluate the weight of the evidence, or determine the truth of the matter." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009). Summary judgment is appropriate only when the court determines that "no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

## Discussion

Because Plaintiff was a pretrial detainee during his time incarcerated at the St. Clair County Jail, his claim arises under the Fourteenth Amendment's objective

5

unreasonableness test, rather than the Eighth Amendment's deliberate indifference test. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). In other words, a pretrial detainee need not prove that the defendant was subjectively aware that his actions were unreasonable. *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). The objective unreasonableness inquiry is a two-part test. First, the plaintiff must show that the defendant "acted purposely, knowingly, or perhaps even recklessly." *Id*. Negligence, or even gross negligence is not enough to satisfy this requirement. *Id*.; *see also Kemp v. Fulton County*, 27 F.4th 491, 495–96 (7th Cir. 2022) (a state official's "mere lack of due care" does not "deprive an individual of life, liberty, or property under the Fourteenth Amendment.") (internal citations omitted).

Second, the court decides if the conduct was objectively reasonable considering the relevant facts and circumstances. *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020); *Miranda*, 900 F.3d at 352. Objective reasonableness "turns on the facts and circumstances of each particular case." *Kemp*, 27 F.4th 495–96 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Reasonableness is determined from the perspective of a reasonable officer standing in the defendant's shoes. *See Kingsley*, 576 U.S. at 397 ("A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight"); *Mays v. Dart, 974 F.3d 810, 820 (7th Cir. 2020)* (in determining whether the defendants' actions were objectively unreasonable, courts must "focus on the totality of facts and circumstances").

Plaintiff frames his claim as a delay in providing medical care, and not one of denial of medical care.  Indeed, nothing in the record suggests that his medical treatment was improper or deficient.   Thus, Plaintiff must also present "'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Miranda*, 900 F.3d at 347; *Summers v. Standiford*, No. 19 C 2978, 2022 WL 3908673, at *5–6 (N.D. Ill. Aug. 30, 2022) ("[P]lantiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.") (citing *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007)). This evidence can include expert opinions, medical records, treatment notes, or physician notes that confirm or corroborate a claim that the delay was detrimental can be sufficient. *Williams*, 491 F.3d at 715.   However, evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient to meet the verifying medical evidence requirement if it does not assist the jury to determine if a delay exacerbated the plaintiff's condition or otherwise harmed him.  *Id.*

Moreover, while Plaintiff also complains about his later medical treatment, the only alleged misconduct before the Court are the actions (or inactions) attributable to Defendant Germaine, who is not a medical provider and did not provide medical care to Plaintiff.  *See Walker*, 940 F.3d at 964 (Plaintiff "must show that the defendant's actions or inaction caused the delay in his treatment."); *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) ("Under any theory, to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." (citation and internal quotation marks omitted)). Thus, to succeed in his claim, the Court must find that a

reasonable jury would conclude that Defendant's conduct in the two hours prior to Plaintiff's receipt of medical treatment by Nurse Murry on December 17, 2018 was objectively unreasonable and that this two-hour delay caused some harm.

Defendant argues that he is entitled to summary judgment as there is no evidence that he, or the roughly two-hour delay Plaintiff attributed to Defendant's actions, "caused some degree of harm." (Doc. 82).  The Court agrees.  In reviewing the record and after drawing all inferences in the light most favorable to Plaintiff, the Court finds that although a reasonable jury could conclude that Plaintiff had an objectively serious medical condition, there is no evidence in the record to show that the two-hour delay he suffered caused some harm so to sustain his constitutional claim.  Apart from Plaintiff's injury which had already occurred, there is no evidence that Plaintiff required more immediate treatment or that a more immediate examination would have had any impact on the alleged harm he claims to suffer.

Plaintiff argues that his outside medical specialist and a treating nurse made comments about the delay in this matter.  Specifically, he represents that the specialist and nurse made comments to the effect of "why did it take you so long to see me?"  However, even ignoring that these witness statements are uncorroborated and do not appear in the record, Plaintiff does not indicate that these comments were referring to the two-hour period between his injury and when he first received treatment.  Thus, Plaintiff's proffered evidence is not verifying medical evidence tying harm to Defendant's actions.  Nor is there any evidence in the record to suggest that Plaintiff required more immediate treatment or that a more immediate examination would have had any impact

on the alleged harm he claims to suffer.  Indeed, regardless of whether he had gone to the infirmary immediately after his injury, Plaintiff testified that he would not have been able to get an x-ray that evening because there was no x-ray available (Doc. 82-1, p. 63). Because Plaintiff failed to present verifying medical evidence that the delay attributable to Defendant caused some harm, Defendant is entitled to summary judgment. *Williams*, 491 F.3d at 715; *see e.g.*, *Jackson v. Sherriff of Winnebago Cnty., Illinois*, No. 3:20-CV-50414, 2022 WL 7498399 (N.D. Ill. Oct. 13, 2022) (granting summary judgment on claim of delay made by pre-trial detainee solely because of lack of verifying medical evidence).

Because Plaintiff has failed to present verifying medical evidence that Defendant's delay caused some harm the Court need not find that Defendant's conduct was objectively reasonable.  Nevertheless, after reviewing the totality of the facts and circumstances in the record and drawing all inferences in the light most favorable to Plaintiff, the Court also finds that no reasonable jury could conclude that Defendant's conduct in this matter rises to a constitutional violation due to a delay in medical care. Although there is a factual dispute as to whether Defendant heard Plaintiff's complaint on the intercom system or relayed Plaintiff's request for medical care immediately following his injuries on December 17, 2018, it is uncontested that Plaintiff was examined by Nurse Murry and received medical treatment approximately two hours after he sustained his injuries.

The Seventh Circuit has previously been unwilling to recognize a delay of only an hour or two in receiving needed medical care as the basis for a deliberate indifference claim—particularly without facts showing that the delay caused significant additional

harm or pain and suffering. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)–41 ("We have held in the past that a two-hour delay is not an unreasonably long wait for an x-ray, an examination, and possibly a set of a fracture.") (citing *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995)); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1371–72 (7th Cir. 1997) (collecting cases) ("not every ache and pain or medically recognized condition involving some discomfort" can support a constitutional claim); *cf. Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (guards could be liable for delaying treatment of inmate's painful broken nose for nearly two days).  The Court finds these cases instructive here.  Although in doing so, the Court in no way suggests that an official can ignore a serious injury and evade liability merely because an inmate ultimately obtains medical attention within an hour or two.  Instead, in considering the totality of the circumstances here, the Court finds that no reasonable jury could conclude that *this* two-hour delay caused additional harm, pain, or suffering to support a constitutional claim.

Further, even assuming Defendant ignored Plaintiff and failed to relay Plaintiff's request for medical care, nothing in the record suggests that Defendant acted purposely, knowingly, or even recklessly.  Indeed, Plaintiff testified that when he spoke to Defendant, he did not inform Defendant of his specific injury, but merely requested to be seen by a nurse (Doc. 82-1, p. 21). Thus, the record does not indicate that Defendant was aware that Plaintiff's injuries needed immediate medical attention or that a failure to take him to the infirmary at that time would exaggerate his injuries.  *See, e.g., Kemp v. Fulton County*, 27 F.4th 491, 495–96 (7th Cir. 2022) (a state official's "mere lack of due care" does

not "deprive an individual of life, liberty, or property under the Fourteenth Amendment.") (internal citations omitted).

In sum, after reviewing the totality of the facts and circumstances in the record and drawing all inferences in the light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude that Defendant's conduct in this matter rises to a constitutional violation due to a delay in medical care.  Defendant is therefore entitled to summary judgment.  Because the Court finds that Defendant is entitled to summary judgment, the Court need not address his qualified immunity argument.

### Conclusion

For these reasons, Defendants' Motion for Summary Judgment (Doc. 82) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment in Defendant's favor and against Plaintiff, and to close this case.

**SO ORDERED.**

Dated: March 6, 2023

_____
DAVID W. DUGAN
United States District Judge

11